**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 3, 2026

# In the Court of Appeals of Georgia

A26A0256. DAY v. DAY.

BARNES, Presiding Judge.

We granted Cynthia Alexandria Day's ("the mother") application for discretionary review of the denial of her motion to set aside the trial court's order granting Samuel Michael Day's ("the father") petition for modification of child custody and child support. She now appeals, contending that the trial court erred in finding that there were no nonamendable defects on the face of the record or pleading and in improperly finding that a change in circumstances related to the parties' income supported a modification in custody. For the following reasons, we affirm in part and reverse in part the trial court's judgment.

This Court reviews a lower court's "ruling on a motion to set aside for abuse of discretion. However, where the facts are undisputed and the issues presented on appeal involve questions of law, we review [that] ruling de novo." *Davis v. Crescent Holdings & Investments*, 336 Ga. App. 378, 378 (785 SE2d 51) (2016). Here, the facts relevant to the mother's arguments demonstrate that the couple was divorced in 2021 and have a daughter who was born in 2020. The settlement agreement, parenting plan, and child support worksheet were incorporated into the final judgment and divorce decree. The father and mother were required to pay child support of $1,274 and $816 per month, respectively, and per the parenting plan, the parents shared legal custody and the mother had primary physical custody of the child. The father was given visitation every other weekend from 10:00 a.m. on Saturday until 8:00 a.m. Monday morning. He also received overnight visitation on Wednesdays and Fridays beginning at 5:00 p. m. and ending at 10:00 a. m. the following day. Additionally, the parenting plan required the parties to make joint decisions as to the child's education, non-emergency health care, religion, and extracurricular activities. In the event there was a disagreement, however, the mother was designated the final decision-maker.

The father filed a petition for modification of custody, parenting time, and child support in December 2023 alleging a "material change in conditions and circumstances which substantially affects the best interests of the Minor Child." Specifically, the father sought joint physical custody of and final decision-making authority on all major decisions for the child. He also requested a modification of child support to reflect both a substantial increase in the mother's income and any changes in custody and parenting time.

Following an evidentiary hearing, and although finding that "since the entry of the Final Judgment and Decree in the parties' divorce action, there has not been a material change in conditions and circumstances which substantially affects the best interests of the [child,]" the trial court entered a modification order that continued joint legal custody of the child with both parents and continued with the mother as primary physical custodian, but increased the father's parenting time, and modified the decision-making terms from the earlier parenting plan. The modification order also decreased the father's child support.

In support of the modifications, the trial court found that the parties had acknowledged they did not follow the parenting time schedule currently in place, but

instead made regular changes to accommodate their schedules. Additionally, the court found that both parents had agreed that changes to the parenting schedule were necessary, and "want changes to the schedule outlined in the Parenting Plan." In contrast, the trial court made several findings demonstrating that the parties were not cooperative in co-parenting the child. The trial court found that the mother had, among other things, testified that she did not want the current parenting time changed, that the mother had "unreasonably" threatened to limit the father's parenting time, move out of the state, withhold the child's tuition payments, and un-enroll the child from her current school. The trial court concluded that "the current Parenting Plan is no longer appropriate for the Minor Child and not in her best interest."

Specific to the parenting plan incorporated in the modification order, the court granted the Father parenting time on the first, third, and fifth Wednesday of every month beginning from the child's release from school or day care and ending with the beginning of school or day care the following Monday. The father also received parenting time every second and fourth Wednesday beginning with the child's release from school or day care and ending Friday when the child returned to school or day

4

care. The modification order also continued joint legal custody with both parents; allowed each parent to enroll the child in one extracurricular activity per semester; allowed each parent to take the child to his or her place of worship; and gave the mother final decision-making authority on the child's education and non-emergency health care. However, the incorporated parenting plan provided that the father would have final-decision making over education.

On December 9, 2024, the mother filed a timely motion for reconsideration. The trial court denied that motion on January 27, 2025, following the expiration of the term of court in which the modification order had been entered. See OCGA § 15-6-3(3) ("The terms of court for superior courts for each of the judicial circuits shall commence as follows: Fulton County – First Monday in January, March, May, July, September, and November.").[1] One month later, the mother moved to set aside the modification order under OCGA § 9-11-60 (d), which provides, in pertinent part, that such a motion may be based upon "[a] nonamenable defect which appears upon the

[1] Following the expiration of the term of court in which a judgment is entered, the trial court lacks the authority "to revise, correct, revoke, modify, or vacate [that] judgment" unless a motion requesting such relief "was filed within the same term of court." *Tremble v. Tremble*, 288 Ga. 666, 668 (1) (706 SE2d 453) (2011) (citation and punctuation omitted). Once the relevant term of court has expired, a party seeking to challenge a judgment must do so by filing a motion to set aside under OCGA § 9-11-60 (d).

face of the record or pleadings." OCGA § 9-11-60 (d) (3). The mother complained that the modification order was contradictory in several regards, including "the legal impossibilty of the Court to both find no change in material circumstances exists and also modify legal and physical custody of the minor child," and the contradictory decision-making authority in the modification order and incorporated parenting plan.

The trial court denied the motion to set aside, concluding,"[h]aving reviewed the record, the [c]ourt is unpersuaded that [the mother] has established a nonamenable defect on the face of the record related to the [c]ourt's factual findings concerning changes to the parenting plan, the award of physical custody, or final decision-making authority." Approximately one week later, the trial court entered a second order denying the motion to set aside,[2] which found that despite the mother's assertion to the contrary, "the [j]udge formerly assigned to this matter specifically found there has been a substantial change in the parties' incomes and needs of the child[.]" The mother now appeals.

On appeal the mother contends that the trial court erred in concluding that there was no nonamendable defect in the modification order for purposes of a motion

_____

[2] It is unclear from the record why the trial court entered the second order on the motion to set aside.

6

to set aside. The mother points to the trial court's modification of custody although it found that there was no material change in circumstances warranting a change in custody, and the contradictions in the modification order and the parenting plan incorporated therein regarding each parents' decision-making authority.

Under Georgia law "there is a well-established two-part test that the trial court must employ before instituting a change of custody." *Wilson v. Arnold*, 372 Ga. App. 583, 584 (1) (905 SE2d 678) (2024); OCGA § 19–9–3(b). First, "[t]he trial court must determine whether there has been a material change in circumstances affecting the welfare of the child since the last custody award." *Wilson*, 372 Ga. App. at 584 (1). If so, the trial court next "determines whether the child's best interests will be served by a change in custody." Id. See also *Maxwell v. Johnson*, 365 Ga. App. 547, 549-50 (879 SE2d 642) (2022) ("when considering a petition for custody change, a trial court must find that a material change in circumstances has taken place before it can consider whether modification of custody is in the child's best interests") (punctuation omitted). Notably, the trial court must find a change in circumstances before it can alter *either* physical or legal custody of the child. See *Wilson*, 372 Ga. App. at 585 (1); *Odum v. Russell*, 342 Ga. App. 390, 393 (1) (802 SE2d 829) (2017).

And having final decision-making authority over decisions concerning a child's medical care, education, religious upbringing, and extracurricular activities is an aspect of legal custody. See OCGA § 19-9-6 (5); *Wilson*, 372 Ga. App. at 585 (1). See also *Borgers v. Borgers*, 347 Ga. App. 640, 644 (1) (a) (820 SE2d 474) (2018) (finding that "a change regarding which parent has primary decision-making authority over education is a change in custody").

Here, as the mother points out, the trial court's modification order expressly found that there had been no material change in circumstances affecting the welfare of the child. Despite this finding, however, the trial court made changes to legal custody by divesting the mother of final decision-making authority as to the child's religious upbringing and extracurricular activities. This portion of the modification order conflicted not only with the parenting plan incorporated therein, which granted the father final decision-making authority as to the child's education, it also modified the original parenting plan under which the parties had joint decision-making over education, non-emergency healthcare, religious upbringing, and extracurricular activities. See *Wilson*, 372 Ga. App. at 585-86 (1) (reversible error existed where, despite its finding that no material change in circumstances had occurred, the trial

court made changes to decision-making for the child); *Odum*, 342 Ga. App. at 393 (1) ("Because the trial court expressly found that there had been no material change in circumstances, the trial court was not authorized to modify the original custody order by altering parental custody arrangements, which included arrangements over which parent would have final authority over certain decisions relating to the child."). Given these contradictions and discrepancies, there were nonamendable defects on the face of the modification order.

The father contends that any error was induced by the mother, pointing to the trial court's statement at the hearing on the motion to modoify custody that while it did not find there had "been a material change in circumstances such to warrant a change in physical custody"– it did find that there had been "a material change in circumstances such to warrant a change in legal custody by sheer virtue of [the mother's] consent to changing legal custody for religion, as well as for extracurricular activities." It is well-established, however, that a court's oral pronouncement has no legal significance and "discrepancies between the oral and written pronouncements must be resolved in favor of the written judgment." *In the Interest of S. B.*, 348 Ga. App. 339, 343 (2) (822 SE2d 835) (2019) (citation and punctuation omitted).

Even so, the trial court expressly found that there had been no material change in circumstances, and thus could not modify the original custody order by altering custodial arrangements, including which parent would have decision-making authority over certain decisions relating to the child. See OCGA § 19-9-6 (5). Accordingly, the trial court should have set aside the provisions in the modification order that modified decision-making authority, and we reverse the trial court's judgment in this respect. See *Weickert v. Weickert*, 268 Ga. App. 624, 627 (1) (602 SE2d 337) (2004) (noting that "a change of custody may be granted only if a new and material change in circumstances affects the child") (citation and punctuation omitted).

Regarding the mother's contention that the modification order also impermissibly made changes to the physical custody of the child, as the father now shares approximately equal parenting time with her, changes to parenting time may be made even in the absence of a material change in circumstances. See OCGA § 19-9-3 (b); *Park-Poaps v. Poaps*, 351 Ga. App. 856, 863 (3) (833 SE2d 554) (2019).

> Visitation rights of non-custodial parents are subject to review and modification upon the motion of either parent every two years without the necessity of showing a material change in circumstances. The standard to be applied in deciding visitation rights is the best interests of the child. Further, it is the express policy of this state to encourage

contact between a child and the non-custodial divorced parent. The trial court is vested with discretion regarding visitation.

*Park-Poaps,* 351 Ga. App. at 863(3)(citation modified).

Because the trial court did not err in declining to set aside the provisions of the modification order addressing parenting time, we affirm that portion of the judgment.

*Judgment affirmed in part and reversed in part. Markle and Hodges, JJ., concur.*